GAMCO, INCORPORATED *vs.* MARGARET K. SHEA.

MARCH 17, 1959.

PRESENT: Condon, C.J., Roberts, Paolino and Powers, JJ.

420

CONDON, C. J. This is a proceeding under the workmen's compensation act, in which an employer gave notice of its intention to suspend compensation payments to its injured employee on the ground that she is able to return to work. General laws 1956, §28-35-46. The employee disputed the employer's claim and the case was heard by a trial commissioner who thereafter entered a decree suspending compensation on the ground that the employee "refuses to accept treatment reasonably required to lessen or terminate her

incapacity." On her appeal therefrom the full commission entered its decree affirming the trial commissioner's decree. From such decree the employee has appealed to this court.

She has filed ten reasons of appeal, but in her brief she has compressed them into three points. 1. The employer failed to prove as a matter of law that she was no longer incapacitated by her injury. 2. The commissioner erred in not determining whether her incapacity from the use of demerol resulted from such injury. 3. There was no evidence that she refused treatment to lessen or terminate the incapacity due to her injury.

It appears from the record that the employee received certain injuries to her shoulders and thighs as a result of an accident arising out of and in the course of her employment on June 13, 1947. On September 18, 1953 she was found by the superior court to be totally disabled from working since November 14, 1947 and by decree of that court was awarded compensation at the rate of $20 per week. In compliance with that decree the employer made such payments without objection until May 31, 1955 when it served notice on the workmen's compensation commission of its intention to suspend such payments. Pursuant to the provisions of G. L. 1956, §28-35-48, it stated in such notice that the employee had been examined by Dr. Henry B. Fletcher and that in his opinion she was able to return to work.

The employee disputed her employer's claim upon being notified thereof by the commission. Thereupon, in accordance with the provisions of G. L. 1956, §28-35-51, the matter was assigned for hearing before a trial commissioner. As a part of such hearing there is in evidence a report in writing of Dr. Americo A. Savastano, who was appointed by the commission as an impartial medical examiner to examine the injured employee pursuant to the provisions of G. L. 1956, §28-35-48. In addition to such report and the testimony of the employee, there is in evidence the testi-

mony of Dr. Fletcher and Dr. Hannibal Hamlin for the employer, and of Dr. L. Addison Curren for the employee.

Doctor Fletcher testified that the employee had been receiving demerol every five hours for about three years and had thereby become an addict to the narcotic. He further testified that at the time he examined her this was the primary source of her disability. He stated that he found no outstanding abnormality of her shoulders but he made no comment as to the condition of her thighs because he did not examine them. On cross-examination he could not say unqualifiedly that there was nothing orthopedically wrong with her in and about the shoulders. He declined to say whether or not she was totally disabled by reason of her injury in the area of the shoulders or the thighs but he did say unqualifiedly that she was totally disabled from any type of work as a result of taking the demerol for so many years. He further testified that in his experience he did not know of any orthopedic injury for which treatment by demerol over such a long period, as in the instant case, would be indicated.

Doctor Hamlin testified that he had examined the employee in 1949 and again prior to the instant proceeding, and that he did not see how her present pain could be related to the original injury. He further testified that her present condition was due to addiction to demerol. He agreed with Dr. Fletcher that the first thing to do was for her to submit to treatment for relief from such addiction. And he also stated that it could be obtained free at the federal hospital in Lexington, Kentucky.

According to Dr. Savastano's report he was of the opinion, after examining the employee and learning her medical history, that she was completely and totally disabled because of her addiction to demerol. He further stated that she should be admitted to a hospital for treatment for such addiction. However, he apparently also felt she was in need of treatment for her orthopedic condition, since as he

stated "she could also be treated with a low back support and with a Thomas collar." He then added: "The prognosis for her ever regaining gainful occupation is extremely poor. I am inclined to believe that she is permanently and totally disabled."

Doctor Curren testified that he attended the employee on June 13, 1947 after she was injured and that she has been his patient since that date. He found from his examination that she was holding her neck crooked and could not move it because it caused her pains down both arms, which he found it did. He stated that this condition has grown worse since that time. He further testified that he had referred her to Dr. Sage and Dr. Pickles for treatment to see if they could do anything for her. Doctor Sage, he said, treated her for a time with traction and the Thomas collar without any permanent relief.

Doctor Curren also testified that no one has been able to determine precisely what the injury is except "that it involved some of the cervical vertebrae, the lower cervical causing pain to radiate down the shoulders and arms." He stated that this condition "was initiated by that fall she had in June of 1947." In treating her he found that nothing he or anyone else could do was effective in relieving her pain, and that finally the only thing he could do to give her some relief was to prescribe demerol. He further testified that such treatment was being continued and that she is unable to do any work.

From this evidence it does not appear that any witness testified that the employee was presently able to return to work or even that she would be able to do so if she were successfully treated for her addiction to demerol. On the contrary there is the uncontradicted testimony of Dr. Curren that she is suffering pain from her injury and that no way has been found to treat such injury so as to relieve the pain except to prescribe demerol. Apparently the trial commissioner himself fully recognized the inadequacy of

the evidence to prove that the employee was able to return to work, as alleged by the employer in its notice of intention to suspend compensation. In his decision he stated: "I want to make it perfectly clear that I am not making a finding that this respondent is completely cured of her injury."

The only finding that he made and upon which he based the decree suspending the employee's compensation is stated in his decision as follows: "All I am finding is that her addiction to Demerol so masks any other condition which she may have that it is impossible to determine whether or not she is suffering from any residuals of the injury sustained by her on June 13, 1947." For that reason he decided that since the employee had refused to accept treatment reasonably required to lessen or terminate her incapacity her compensation must be suspended. The full commission adopted such conclusion and affirmed the trial commissioner's decree.

This conclusion begs the question and assumes that the suggested treatment for demerol addiction at the federal hospital in Lexington, Kentucky, was designed to lessen or terminate the incapacity resulting from the employee's injury of June 13, 1947. There is a total absence of any medical evidence to that effect. As Dr. Curren testified, the employee "wouldn't have any trouble with demerol" if she didn't have pain from her injury. And he further testified that unless such pain could be controlled he didn't believe the use of demerol could be stopped.

This case presents an unusual situation where a duly qualified medical practitioner in the course of treating his patient has professionally concluded that the only recourse left to him to alleviate her pain is to administer a narcotic which he frankly admits is not designed to cure her injury. Whether or not in the circumstances this was good medical practice is not a proper subject of inquiry here. The only subject of inquiry under the employer's notice of intention

to suspend compensation was whether or not this employee was able to return to work. On that allegation the employer had the burden of proof. *Moss Construction Co.* v. *Boiani,* 84 R. I. 486. We have held that a proceeding of this kind is similar to a petition to review and raises only the issue "whether the respondent has ceased to be totally disabled by reason of his injury." *Gilbane Building Co.* v. *Feeney,* 86 R. I. 385, 135 A.2d 262, 264.

There is no evidence to prove that allegation nor is there, in our opinion, any evidence tending to prove that this employee has refused "to accept treatment reasonably required to lessen or terminate" her incapacity resulting from her injury which under G. L. 1956, §28-33-6, would bar her from receiving compensation during the period of her refusal. Consequently *Cranston Print Works* v. *Pascatore,* 72 R. I. 471, *Esmond Mills, Inc.* v. *Mollo,* 78 R. I. 27, *Carl-Art, Inc.* v. *Cardullo,* 78 R. I. 171, and *Mancini* v. *Superior Court,* 78 R. I. 373, cited by the employer are not in point. In those cases the treatment which was refused was admittedly curative or designed to promote the cure of the injury which the employee had sustained.

In the case at bar the suggested treatment is solely designed to remove the effects of the use of demerol. There is no claim that it will cure the injury because of which the employee has been found by the superior court to be totally disabled and for which under its decree she is receiving compensation. Moreover on the record here, without more definite medical testimony that it was improper treatment for Dr. Curren to prescribe demerol as he did, we are reluctant to say that his patient must cease such treatment. It appears to us that for the workmen's compensation commission to do so is quite beyond their province. In any event we are of the opinion that they erred, because there is no legal evidence in the record to prove that the employee is no longer incapacitated by her injury and is able to return to work.

The employee's appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Hinckley, Allen, Salisbury & Parsons, Thomas J. Hogan, Guy J. Wells,* for petitioner.

*Charles F. Cottam,* for respondent.