LESTER R. CARPENTER *vs.* GLOBE INDEMNITY COMPANY.

JULY 2, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J.   This is a proceeding under the workmen's compensation act in which the petitioner, an injured employee, sought to have the respondent insurer of his employer ordered to continue certain weekly payments of compensation in accordance with the terms of a preliminary agreement, entered into between him and his employer with the approval of the director of labor, as provided by that act. G. L. 1938, c. 300, art. III, § 1.

The proceeding was commenced in the office of the director of labor, who, after a hearing, decided in favor of the petitioner.   A decree was duly entered on that decision and the respondent appealed therefrom to the superior court. After a hearing *de novo* before a justice of that court, who decided against the petitioner, a decree was entered on the trial justice's decision denying and dismissing the petition, from which decree the petitioner has appealed to this court.

The petitioner's appeal raises several questions but the main question is: May an agreement for compensation made in accordance with art. III, § 1 of the workmen's compensation act be declared at an end by the employer or his insurer, without following the procedure prescribed in art. III, § 13 of that act, on the ground that the employee's incapacity has ended.   Our answer to this question will be decisive of the whole cause.

The facts are undisputed.   The petitioner was injured on October 4, 1937, while in the employ of respondent's insured.   The petitioner lost the index finger of his left hand at the second joint and the middle finger of the same hand at the first joint.   On October 20, 1937, he and his employer filed, in the office of the director of labor, an agreement for compensation for said injuries. This agreement was approved by the director on October 26, 1937.   Besides providing for compensation for the specific injuries of the loss of parts of

the two fingers, in accordance with the provisions of the statute covering such injuries, it also provided for weekly payments of ten dollars for total disability and it further provided that: "This compensation shall be payable to Lester R. Carpenter commencing October 8, 1937, during total disability, or until otherwise terminated in accordance with the provisions of the Workmen's Compensation Act of the State of Rhode Island."

Payments were made by the respondent to the petitioner in accordance with this agreement up to and including December 3, 1937, after which respondent made no further payments for total disability. On December 15, 1937, respondent notified the petitioner by letter that his compensation would cease as of December 3, 1937, as Dr. Howard Laskey, who had been treating the petitioner, had informed the respondent that he had discharged petitioner from further treatment and that he was able to work on December 6, 1937. The petitioner did not acknowledge this letter.

It does not appear from the evidence whether petitioner's employer was ready to reemploy him on December 6, 1937, at his regular employment and wages, nor does it appear whether any other employment was available to him. In any event, petitioner apparently did not go to work and, in December 1938, he filed a petition in the superior court in accordance with art. III § 1 of the act praying that respondent either be adjudged in contempt for wilfully neglecting to make the weekly payments for total disability, as provided in the agreement approved by the director of labor, or that execution be issued against it for the overdue and unpaid weekly payments.

This petition was heard by a justice of that court on January 11, 1939, on the prayer for judgment in contempt, petitioner having expressly waived at the hearing his prayer for an execution. The justice denied the petition on the ground that, while he believed that the respondent should

have gone to the director of labor to have the agreement amended, nevertheless its conduct in not doing so, under the circumstances in evidence before him, was fair and reasonable and it ought not to be adjudged in contempt. He did not determine whether, under the statute, petitioner was entitled to compensation in accordance with the agreement until modified by the director of labor, but confined his decision to the single finding that respondent's conduct did not warrant adjudging it in contempt. No decree was ever entered on this decision.

In this situation petitioner, in January 1939, the same month in which the superior court made the above decision, filed the instant petition in the office of the director of labor. The respondent filed in the office of the director of labor an answer to that petition which, in substance, set up the following defenses: (1) That its obligation to make further payments under the agreement ceased upon the report of the doctor that the petitioner was no longer disabled, and that it was not necessary for it to petition the director of labor to review the agreement for the purpose of considering such medical evidence of the cessation of petitioner's disability; (2) that, in any event, the director of labor was without jurisdiction, as the decision of the superior court denying and dismissing the petition to adjudge respondent in contempt rendered the matter before the director *res adjudicata*.

These defenses were overruled by the director, who granted the petition and entered his decree ordering respondent to continue payments under the agreement. On appeal to the superior court from this decree, the respondent urged the same defenses there, and the justice of the superior court who heard the matter rested his decision in favor of the respondent substantially on its second defense. Although he did not specifically rule that the decision in the contempt proceeding was *res adjudicata* he said that he felt he ought

to follow it. He did so and then added the specific findings that petitioner was able on December 3, 1937 to resume work at his regular occupation and that his compensation had ceased, under the terms of the agreement, as of such date.

The instant petition appears in substance to be a petition to enforce an agreement as provided in art. III, § 1 of the act, and the petitioner appears to have.presented evidence in the superior court solely in support of such a petition, although his counsel later in argument before that court referred to it as a petition under § 13. We are of the opinion that it ought to be treated by us as a petition under § 1, notwithstanding that it was commenced in the office of the director of labor instead of the superior court. No objection was raised by the respondent to the bringing of this petition in the office of the director, probably because the respondent supposed it was a petition for review. Except for the defense of *res adjudicata* above mentioned, the respondent appears to have proceeded on the petitioner's theory that the director of labor was empowered to enforce agreements approved by him, and that an application to the director to compel respondent to comply with the terms of such an agreement was a proper procedure under the statute.

Procedure under the workmen's compensation act is set out in considerable detail in art. III of the act. In § 1 thereof it is provided that agreements for compensation "shall be enforceable by a suitable action or proceeding brought by either of the parties thereto in the superior court, including executions against goods, chattels and real estate, and including proceedings for contempt for wilful failure or neglect to obey the provisions of such agreement . . . ." We find no other provision of the act which prescribes any additional method or methods of enforcement. While the above-quoted language of the act does not expressly provide for a petition such as the instant petition, it is arguable that such language is sufficiently broad and general to warrant

this court in permitting such a petition, if properly filed, to serve the purpose intended by the act.

Ordinarily we would insist that the filing of such a petition be strictly in accordance with the act, but the circumstances of the instant cause, in our opinion, fully warrant a more liberal view if, indeed, they do not demand it in the interest of justice and in compliance with the rule of liberal construction of the act so often expressed by this court. Here the effect of the respondent's appeal from the order of the director of labor was to remove the cause to the superior court for a hearing *de novo*. Upon this being done, the cause was then in the tribunal in which it should have been entered in the first instance, and that tribunal was vested with powers as ample to hear and decide the controversy on appeal as it would have had if the controversy was before it originally. It was on such a view that both parties proceeded to try the cause before the justice of the superior court who, on his part, correctly conceived the power of that court to be as ample in the premises as we have above stated. This being so, justice will be served and no real violence will be done to the statute if we assume that the instant petition was properly before the superior court for its determination as a petition to that court under art. III, § 1 to enforce the agreement.

The petitioner contends, in support of his position, that once an agreement for compensation is entered into by the employer and the injured employee, and the agreement is approved by the director of labor in accordance with § 1 of art. III, such agreement is binding until it is modified by the director of labor after a hearing upon a petition for review of the agreement as provided in § 13 of that article, or by a supplemental agreement approved by the director.

The respondent contends, in substance, that such agreement is a contract between the parties which governs their rights, and which may be terminated without recourse to

the procedure of § 13 whenever the terms of the contract have been fulfilled. In other words, the respondent claims the right to determine for itself provisionally when its obligation under the contract to make payments to the petitioner during total disability, has ceased, subject, however, to the risk that the proper tribunal might later determine that such total disability had not then ceased. The statute, it argues, does not require it to submit the question of cessation or diminution of petitioner's disability in advance to the director of labor before it can discontinue payments to the petitioner, but merely permits that procedure if either party cares to invoke it. The agreement, it argues further, may provide for the termination of the payments without recourse to the director being necessary.

In the instant cause, for example, respondent points out that the language of the agreement with reference to its obligation to make the stipulated payments to the petitioner is "during total disability, or until otherwise terminated in accordance with the provisions of the Workmen's Compensation Act of the State of Rhode Island." The respondent argues that this language justified its determination to cease payments to the petitioner when Dr. Laskey stated that the petitioner was able to return to his regular work, since such medical opinion was a reasonable basis for considering that the period of the "duration of total disability" of the petitioner had expired; and that this determination placed upon the injured employee the burden of taking suitable action under the act to compel the continuation of payments. Respondent further argued that, to hold, under the above-quoted language of the agreement, that the employer had the obligation to take any action under the act rather than the injured employee, would be to substitute the conjunction "and" for the disjunctive "or" following the word "disability" and thus write into the agreement something that is not expressed therein.

The respondent also contended that the language of § 13 is not obligatory but permissive and leaves it to either party's election to pursue the remedy provided thereunder for a review of the agreement. It rests this contention on the legislature's use of the word "may" in that portion of the section as follows: "At any time after the date of the approval of an agreement or the entry of a decree fixing compensation . . . any agreement, award, findings or decree may be from time to time reviewed by the director of labor upon the application of either party . . . ."

If the respondent's contentions were sound, the entry of an agreement approved by the director would be of little value to the injured employee. Conceivably, in most instances, an injured employee would be better advised not to enter into any agreement, but to submit his case to the adjudication of the director and obtain a decree or order finding disability, and fixing payments, in the assurance that such decree or order could not be avoided by the employer or his insurer without first submitting the matter to the director for his impartial adjudication. While the respondent's contentions seem plausible when stated singly, yet when considered in the light of the scope and purpose of the whole workmen's compensation act, we think they are not sound.

The agreement provided for in § 1 is something more than the ordinary simple contract between individuals. It is clothed with a formality that is expressly provided by the act as a condition precedent to the agreement having any validity. Until it has received the express approval of the administrative officer, who is charged with the enforcement of the workmen's compensation act, and who is vested with a substantial portion of judicial power in the disposition of cases arising under it, the agreement is totally lacking in contractual force even though the parties thereto have done all that would be necessary to constitute a binding contract between them under the law of contracts.

Such an agreement is, therefore, not a simple contract but is equivalent to a decree. Indeed, the act provides for its enforcement precisely as for the enforcement of a decree. It is not only a meeting of the minds of the parties, it is that and something more; it is a solemn act of the parties solemnly approved by an impartial officer of the state and, as such, it is solemnly recorded in the office of the director of labor. The legislature must have intended that such solemnity was to serve some useful purpose. We think it was to assure the injured employee of the protection of his rights under the act. To permit the employer to decide that he was no longer bound by the agreement, because of a change which he claims has occurred in the factual situation, upon which the agreement was originally founded, would be to set at naught such solemnity and greatly to weaken such protection, besides setting up the employer, in the first instance, as the judge of whether his obligation under the agreement still continued.

We are of the opinion that the legislature intended to guard the injured employee against just such a situation and that, while encouraging the parties to enter into agreements without the necessity and expense of a judicial hearing, it took care that such agreements should not easily be avoided by providing, in effect, that they should have the same force as decrees of the court in settling the rights and obligations of the parties. And to make sure that such agreements entered into *in pais* would not only be of such binding force, but also that they would not be detrimental to the rights of the injured workman, the legislature further provided for their approval by the director of labor before they went into effect.

However, the respondent contends that the express language of the agreement does not admit the construction which the petitioner relies upon. The agreement is set out on a printed form which is regularly used and which, in the instant cause, has been adapted by the parties to fit the

terms of their particular agreement. The specific portion of the agreement with which we are now concerned, in considering respondent's above contention, is: "This compensation shall be payable to Lester R. Carpenter commencing October 8, 1937, for during total disability or until otherwise terminated in accordance with the provisions of the 'Workmen's Compensation Act' of the State of Rhode Island." The words "during total disability" after the word "for" are in typewriting in a blank space on the printed form. The time during which compensation is thus agreed to be payable is not definitely marked, but is dependent upon a fact determinable in the future, namely, the physical condition of the injured employee as to total disability.

The petitioner contends that the above-quoted language of the agreement shows that the parties contemplated that that question, if later disputed, would ultimately be determined in accordance with the provisions of the act. In answer to that contention, respondent argues that it would have weight if the parties had used the word "and" after the word "disability" but that, in fact, they used the word "or"; and that this word implies an alternative and cannot be interpreted to impose an additional duty upon the employer to seek and obtain a decision of the director that the injured employee's disability has ceased after that fact has actually been found, to its satisfaction, by a competent physician.

We think respondent's argument in this connection clearly begs the question. Who is authorized to find that fact? Clearly not the employer, either from his own knowledge or from an opinion, professional or otherwise, obtained from another. Having once agreed, with the approval of the director of labor, that the injured employee's disability was total, that fact was as definitely settled as if it were a finding incorporated in a decree under the statute. Clearly also the employee cannot determine this question. In our

opinion, a finding that such disability has ended or diminished can be reached only by a supplemental agreement, also approved by the director of labor, or by a decree or order of the director after a hearing on a petition for review. In view of all these considerations, the contention of the respondent, which is based upon the use by the parties of the word "or" rather than the word "and" in the above-quoted portion of the agreement between them, is not convincing to us.

The view which we have taken of this contention of the respondent needs no elaboration, but we may add that, regardless of the language used in the agreement, we are of the opinion that the policy of the workmen's compensation act does not permit the injured workman to waive the protection guaranteed to him thereunder. The state is interested in the full attainment of the objectives of the act. One of the chief objectives is to require industry, in the first instance at least, to take care of casualties occurring therein and thus save the general public from being compelled to bear a more or less substantial portion of this burden out of the public revenues. A construction of the language of an agreement, under § 1 of the act, that would, in effect, approve the employee's contracting out of the full protection of the act should be avoided in consonance with such public policy.

Respondent contends further that, because the petition was not filed in accordance with § 13 "before the expiration of the period for which compensation has been fixed by such agreement or decree", it was improperly filed. Respondent bases this contention on the finding of fact by the trial justice in the instant proceeding, "that petitioner was fully able to resume work at his regular occupation from and after December 3, 1937." The short answer to this contention is that the instant petition is not one to review the agreement but a petition to enforce its terms. On the respondent's view of its rights and obligations under the agree-

ment, this contention may be advanced, but under the view which we have taken of the agreement and the act, this question was not properly before the court and, therefore, such contention is untenable.

The respondent makes a final contention, although it does not appear to be very strongly pressed, that the trial justice, who heard the instant petition, was entitled to give such weight as he thought proper to the decision of the justice of that court, who found that respondent was not in contempt for discontinuing payments under the agreement without first obtaining an order from the director of labor. Whether or not this contention is sound need not concern us here. The trial justice in the instant cause did not have the same question before him for determination that the trial justice had in the contempt proceeding. The former justice was not being asked to adjudge the respondent in contempt but merely to order it to comply with the terms of the agreement. In other words, the only question before him was whether the petitioner was entitled to the enforcement of that agreement. In considering that question the trial justice went beyond the scope of the petition and decided that petitioner was "fully able to resume work at his regular occupation from and after December 3, 1937," and that the respondent was justified in ceasing payments as of that date. In so deciding, and in allowing inquiry to be made into the matter of petitioner's total disability, as settled in the agreement and unmodified by any supplemental agreement or by any order of the director of labor, the trial justice committed error. He misconceived not only the force and effect of § 1 of art. III of the workmen's compensation act, with reference to agreements for compensation, but he also confused the purpose of that section, with reference to enforcement of such agreements, with § 13 thereof that provides a method for their review.

We have not considered the evidence of petitioner's total disability and when it ceased, because, as we have said above,

we deem this petition to be one for enforcement of the agreement under § 1 and not for a review of the agreement under § 13. Whether such total disability has ceased can be properly determined, if the respondent so desires, by filing a petition for a review of the agreement in the office of the director of labor. Before being entitled to a hearing on such a petition, however, it will be the duty of the respondent to pay to the employee the amounts specified in the agreement. *Hingeco Mfg. Co.* v. *Haglund*, 65 R. I. 218.

The appeal of the petitioner is sustained, the decree appealed from is reversed, and the parties may, on July 8, 1940, submit to this court for our approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Eugene R. Gilmartin, James H. Hagan, Jr.*, for petitioner.

*Clifford A. Kingsley, Francis V. Reynolds, Hailes L. Palmer*, for respondent.