EDISON WAREHAM *vs.* UNITED STATES RUBBER COMPANY.

JULY 23, 1947.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is a petition for workmen's compensation which was heard by a justice of the superior court who found that the petitioner was disabled by reason of an accident arising out of and in the course of his employment and that he was "totally incapacitated up to substantially the present time", but "that he is now capable of doing light work."

The hearing in the superior court was concluded on October 23, 1946, and the trial justice's rescript was filed on November 4, 1946. A decree embodying his findings and

awarding petitioner compensation at the rate of $20 a week from the date of the accident, April 19, 1946, to November 10, 1946, with medical expenses, and $18 a week thereafter "on the basis of partial incapacity, such amount to be diminished so far as may be by the amounts earned, in accordance with the provisions of the Workmen's Compensation Act", was duly entered in the superior court on November 22, 1946. From that decree respondent has appealed to this court.

Respondent's reasons of appeal, as filed, are that said decree is against the law; against the evidence and the weight thereof; and against the law and the evidence and the weight thereof; that it is erroneous in holding that the petitioner sustained an injury arising out of and in the course of his employment; that it is erroneous in holding that petitioner has been totally incapacitated as a result of injuries sustained by him from April 19, 1946 to November 10, 1946; and that it is erroneous in awarding petitioner compensation of $20 a week to November 10, 1946, and of $18 a week thereafter, on the basis of partial incapacity. In its brief and argument in this court, respondent expressly waived its reason of appeal that the decree was erroneous in holding that the petitioner sustained an injury as a result of a compensable accident. Its other reasons based on a consideration of the weight of the evidence are without merit in a workmen's compensation case. *Haskell Mfg. Co.* v. *Smith,* 72 R. I. 161. This leaves only the reasons of appeal which are founded on alleged errors of law.

Those reasons will be considered together. In substance, they amount to a claim that there is no evidence to support the trial justice's finding that petitioner was totally incapacitated to November 10, 1946, or to support an award of any compensation for partial disability after that date. We shall consider those contentions in that order.

Petitioner sustained an injury to his back while at work on April 19, 1946. He immediately reported such injury and was taken to respondent's doctor who "strapped up"

petitioner's back, after he had told the doctor how the injury was caused. Petitioner then went to his home and has not worked since April 19, 1946. He testified at the hearing in the superior court that he was still unable to work because of pain in his back; that he could not stand or sit long without pain; that he was afraid he could not use his back again and would not be able to earn his living; and that he tried in the spring and later, just before the hearing in the superior court, to do small odd jobs around his home, but that he could not do them because of pain when he stooped. He further testified that he could not work at his former employment because it was too heavy and there was too much stooping, but that he was willing to do lighter work, if he could. Petitioner's wife testified that he had tried to do work around the house and was not able to do it. It does not appear from her testimony, however, when he tried to do such work.

It also appears from the evidence that, on May 2, 1946, petitioner consulted Dr. Ernest D. Thompson, an orthopedic specialist who examined him and thereafter treated his back. Doctor Thompson testified for petitioner that, at the time of such examination, he felt that petitioner's back "was in need of support in the form of a back brace and advised rest." He also testified that petitioner was then unable to do any work. Besides prescribing a brace for petitioner, he ordered physiotherapy treatments, consisting of heat, massage and exercise by a physiotherapist. Petitioner complied with this advice and on July 15, 1946 he was so far improved that Dr. Thompson advised him to discontinue the brace and to "move his spine and use the muscles of his spine". He also advised him to try light work around the house.

Petitioner testified that thereafter he continued to wear the brace because he felt pain. He also testified that, for the same reason, he could not do light work around the house. On September 6, 1946 he went to Dr. Thompson again. The doctor testified that, on that date, he found the spine had improved remarkably and that the petitioner was "brace

free". However, he also testified that he then found a change in petitioner's nervous system. He stated that an anxiety neurosis had "crept in" and had become a factor which was then the prominent feature, and that "the back findings were very minimal." He further testified that petitioner's spine required no further treatment and that he was not in that respect disabled, but that his anxiety neurosis had then become a "definite problem". Doctor Thompson accordingly referred him to Dr. George L. Shattuck, a psychiatrist.

Doctor Shattuck did not testify but a report of his examination of petitioner on September 9, 1946 is in evidence. He found substantially that petitioner's back was "negative", although he complained of pain there. The doctor further found that the "nerve-pain is evidently becoming less—under local treatment and—in all probability—will gradually disappear—without any incapacitating aftermath . . . There is some evidence that he may be developing an anxious-depressed and emotional state—as a result of this state of health and the complications—and I believe that this mental state is operating to retard recovery . . . ".

That report tended to corroborate Dr. Thompson's suspicion that an anxiety neurosis had appeared. When the petitioner was again examined by Dr. Thompson on October 5, 1946 he was still complaining of constant back pain. He also complained of nervousness and fatigue and that he was unable to sleep. The doctor testified that, to him, the neuropsychiatric symptoms and those complaints had only an "emotion basis" and not an "orthopedic basis". As far as petitioner's orthopedic condition was concerned, the doctor testified that petitioner was not disabled, but as far as his neuropsychiatric condition was concerned he was unable to do his work. Doctor Thompson did not see the petitioner after October 5, 1946, but, at the time of the hearing in the superior court, he had not discharged petitioner as his patient.

After carefully considering the above evidence and other evidence appearing in the transcript which we need not dis-

cuss here, we are of the opinion that there was legal evidence to support the trial justice's finding that petitioner was disabled up to the time of the hearing in the superior court. It is clear from Dr. Thompson's testimony that petitioner was no longer orthopedically disabled at that time, but that he was disabled because of the anxiety neurosis which had set in, according to Dr. Shattuck's report, "as a result of this state of health and the complications", which we understand to mean petitioner's back injury. It is true that Dr. Thompson testified that other factors, such as litigation, family situations, difficulty with fellow workers and other innumerable causes may account for such a condition. Nevertheless, in the circumstances here, it was reasonable to infer that petitioner's neuropsychiatric condition grew out of and was caused by his back injury.

In such circumstances anxiety neurosis is a compensable disability. "Traumatic neuroses following physical injuries are almost universally compensated, even though financial, marital and other worries play a part." Horovitz on Workmen's Compensation, 76. The author cites cases to support that statement. We entertain no doubt in the matter so long as there is evidence upon which to base a connection between the physical injury and the nervous state. However, if there is also evidence that the workman's physical injury is no longer disabling and that he can cure his neurotic condition by doing light work, then the trial justice would be warranted in finding that the petitioner should try such work. In the case at bar Dr. Thompson testified that he has advised petitioner to do such work to aid in his restoration to health, and the petitioner has testified that he is willing to try it. The trial justice has found that light work awaits petitioner and that he is now capable of doing it. From a practical viewpoint it was correct, therefore, for the trial justice to find that petitioner was only partially disabled, because "he is now capable of doing light work".

One difficulty presents itself. The decree adopts November 10, 1946 as the date of the ending of total disability and the beginning of partial disability, notwithstanding that the case was finally heard on October 23, 1946. We are of the opinion that October 23, 1946 is the correct date of the termination of petitioner's total disability and the commencement of his partial disability and that there is no evidence to support the trial justice's finding that petitioner was totally disabled beyond that date.

■■ A further difficulty exists by reason of the trial justice's award of maximum partial compensation without any evidence to support such an award. Under our workmen's compensation act, an employee is entitled to compensation only for loss of earning capacity. As a petitioner for compensation, he has the burden to prove such loss and, with reasonable definiteness, its amount. *Weber* v. *American Silk Spinning Co.*, 38 R. I. 309. As a respondent, however, resisting a petition brought by his employer to review an existing award of compensation, he has no such burden, as, in such case, it rests on the petitioner, who is the employer. *Walsh-Kaiser Co., Inc.* v. *D'Ambra*, 73 R. I. 37. There we held that the petitioning employer, having proved that the employee was no longer totally incapacitated, and having failed to prove the extent of the employee's partial incapacity, the existing award of compensation could only be reduced to the maximum partial compensation until petitioner produced evidence which proved employee's actual present earning capacity.

■ In the case at bar the trial justice's award of maximum partial compensation subject "to be diminished so far as may be by the amounts earned" would, therefore, have been correct if this were a petition for review by the employer; but since it is an original petition brought by the employee it is clearly incorrect. Its effect is to absolve the petitioning employee from the obligation to prove his loss of earning capacity, and is contrary to the law explicitly laid down in the *Weber* case.

A practical question now arises. Should we leave petitioner to prove his present loss of earning capacity in some other proceeding, or should we allow him a further opportunity to offer such proof in the instant proceeding? In *Dorfman* v. *Rosenthal Ackerman Millinery Co.*, 64 R. I. 498, under similar but not identical circumstances we remanded the cause to the superior court to give petitioner an opportunity to present, if available, further evidence as to what extent petitioner's injury diminished, if at all, his previous earning capacity. We think substantial justice will be served by a like order in the case at bar.

■ This is an appropriate occasion to observe as we did in the *D'Ambra* case that our workmen's compensation act does not provide procedure to govern a situation such as was presented in that case and as is presented in the instant case. It might be well if the legislature would prescribe a method for dealing with such situations, so that adjudication could rest upon the authority of a statute and not merely upon what this court believes should be the proper method. The problem is primarily legislative and not judicial, but in the absence of specific legislative direction it is our duty to make the statute work consistently with what we understand was the intent of the legislature.

The respondent's appeal is sustained, the decree appealed from is modified by striking from paragraph numbered 2 the date "November 10, 1946", and inserting in lieu thereof the date "October 23, 1946"; by striking from paragraph 4 the date "November 10, 1946", where it first appears, and inserting in lieu thereof the date "October 23, 1946"; also by striking from said paragraph everything after the word "Act" in the fourth line thereof.

The cause is remanded to the superior court for further hearing to enable petitioner, if he shall so desire, to show his diminished earning capacity, and, if he does not so desire, then for the entry of a decree as modified by this opinion.

Moss, J., did not participate in the decision.

*Kirshenbaum & Kirshenbaum,* for petitioner.

*Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan,* for respondent.